

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SIMBA MAKONI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>FACILITY COMMANDER EDWIN SCHROEDER, DEPUTY RODRIGUEZ, DEPUTY LOONEY, DEPUTY SNYDER, DR. PHAM TRAN and NURSE MANNIE,<br><br>　　　　　Defendants. | Case No.: 16cv2497-BEN (PCL)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM** |

On October 3, 2016, Robert Simba Makoni ("Plaintiff"), a person detained at the Vista Detention Facility ("VDF") in Vista, California, at the time of filing but subsequently released from custody, and proceeding pro se, filed a civil rights Complaint ("Compl.") pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He alleges violations of: (1) his Fourteenth Amendment right to freedom of association arising from a policy of segregating inmates by race at the VDF; (2) his Eighth Amendment right to be free from deliberate indifference to his serious medical needs as a result of the medical care he received at the VDF; (3) his Eighth Amendment right to be free from deliberate indifference to his safety by the disclosure of his medical condition to other inmates; and (4) his First Amendment right to

be free from retaliation after filing complaints about his treatment at the VDF. (Compl. at 6-29.) Plaintiff did not prepay the $400 civil filing fee required to commence a civil action by 28 U.S.C. § 1914(a), but instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.) He also filed a Motion for a Preliminary Injunction and a Temporary Restraining Order, and a Motion for Appointment of Counsel. (ECF Nos. 3-4.)

On December 19, 2016, the Court denied all of Plaintiff's motions, including his IFP motion which was not properly supported, and dismissed this action without prejudice to Plaintiff to either pay the filing fee or file a properly supported IFP application. (ECF No. 6.) Plaintiff has now filed a properly supported IFP Motion. (ECF No. 7.)

## I.  Motion to Proceed In Forma Pauperis

As Plaintiff was informed in the Court's previous Order, all parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400. See 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). Rodriguez v. Cook, 169 F.3d 1176, 1177 (9th Cir. 1999). A federal court may authorize the commencement of a civil action without prepayment of fees if a person submits an affidavit, including a statement of all assets he possesses, that shows he is unable to pay the required filing fee. See 28 U.S.C. § 1915(a). The determination of indigency falls within the court's discretion. California Men's Colony v. Rowland, 939 F.2d 854, 858 (9th Cir. 1991), rev'd on other grounds, 506 U.S. 194 (1993); see also Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948) (noting that while a civil litigant need not "be absolutely destitute to enjoy the benefit of the [28 U.S.C. § 1915]," his affidavit must nevertheless demonstrate to the court that he cannot, because of poverty, pay or give security for the costs of suit "and still be able to provide himself and dependents with the necessities of life.") (internal quotations omitted). The facts as to poverty must be stated with "some particularity, definiteness, and certainty." United States v. McQuade, 647 F.2d 938, 940 (9th Cir. 1981) (citation omitted).

Here, the Court finds that Plaintiff has now submitted an affidavit sufficient to satisfy both 28 U.S.C. § 1915(a)(1) and S.D. CAL. CIVLR 3.2. Plaintiff claims to receive a monthly income of $649 in public assistance. (ECF No. 7 at 7.) From this supplemental accounting, the Court finds Plaintiff has insufficient available funds from which to pay any filing fees at this time. See 28 U.S.C. § 1915(b)(4). Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP.

## II.   Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A.   Standard of Review

"The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing," complaints filed by all persons proceeding IFP, and by those who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program." See 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. The "mere possibility of misconduct" falls short of meeting the Iqbal plausibility standard. Id.; see also Moss v. U. S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief."

Iqbal, 556 U.S. at 679; see also Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) ("Under § 1983, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)"). However, while the court has an "obligation . . . where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), citing Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), it may not, in so doing, "supply essential elements of the claim that were not initially pled." Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Plaintiff's Allegations**

Plaintiff alleges that on June 6, 2016, he was arrested on a probation violation and the arresting officers picked up a 30-day supply of prescription medication for Plaintiff on their way to the VDF. (Compl. at 8.) Plaintiff informed the VDF medical staff upon arrival that he was HIV positive and was required to take his prescribed medication at 10:00 p.m. every day, and that he had not yet taken his medication that day. (Id.) Defendant Deputy Looney allegedly denied Plaintiff's request for his medication despite Plaintiff having been told by the medical staff that the Deputies would see to it that he had his medication, and

he was denied his medication for the next 48 hours. (Id. at 9.) After spending 48 hours in a holding cell, Plaintiff asked Deputy Looney why the other inmates in the holding cell had been assigned cells but he had not, and was told it was due to a policy of racially segregating inmates. (Id. at 24.) On June 8, 2016, he again asked Deputy Looney for his medication, and complained he was receiving peanut butter sandwiches despite a peanut allergy, but the defendant dismissed his complaints and refused to allow Plaintiff access to a nurse, and Plaintiff filed an inmate grievance against Deputy Looney. (Id. at 9-10.)

Plaintiff was seen by Defendants Dr. Tran and Nurse Mannie on June 9, 2016, and complained about the lack of access to his HIV medication, the peanut butter sandwich meals, and that he was not getting medication for his gastro-esophageal reflux disorder. (Id. at 10.) Dr. Tran told Plaintiff that he was unable to do anything for him because he had not yet received Plaintiff's medical records, but there would be no harm in missing a few days of his HIV medication. (Id. at 11.) With respect to Plaintiff's complaint about receiving peanut butter sandwiches, Dr. Tran told him that "a lot of criminals who come here use the same tricks to get a diet preference, so no." (Id.)

On June 10, 2016, Plaintiff was approached by Deputy Looney who tore up the inmate grievance Plaintiff had filed against him and threw it in the trash, and told Plaintiff he was going to transfer him to the Central Jail or the George Bailey Detention Facility. (Id.) Plaintiff sent a follow-up medical request on June 11, 2016, complaining that he had still not received any medication, but received no response. (Id. at 12.) That same day he was approached by Deputy Looney and Defendant Deputy Rodriguez, who told him he needed to stop filing grievances and making ridiculous requests, and he was moved to a module at the VFD. (Id.) Plaintiff attempted to speak to Defendant Nurse Mannie when he arrived there, but Deputy Rodriguez told Nurse Mannie not to speak to Plaintiff, and Deputy Rodriquez pushed Plaintiff into his cell where he stayed until he was called to court on July 18, 2016. (Id. at 12-13.) He filed a grievance against Dr. Tran, Nurse Mannie and Deputy Rodriguez on July 14, 2016, which included a request for medical care, which was returned to him the next day because it was a request and not a grievance. (Id. at 14.)

On July 18, 2016, Plaintiff was transferred to a dormatory in the VDF, where he received a response to his June 11, 2016 medical request, which informed him that his medication had been ordered and an outside referral had been scheduled. (Id. at 13.) Plaintiff asked Nurse Mannie that evening why his medication had only now been ordered when he had been brought to the VDF with a 30-day supply, and was told that he should be grateful he is getting the medical care he is receiving and if he wanted better care he should stay out of jail. (Id.) Plaintiff alleges Nurse Mannie refused to allow him to see a doctor and refused to change his peanut butter lunches. (Id.)

Plaintiff began receiving his medication on July 16, 2016, but was still not provided with a no-peanut diet, and was informed on July 30, 2016 that the VDF would not approve of his previously scheduled and recommended procedures for his gastro-esophageal reflux disorder. (Id. at 16.) He filed a grievance that day against Dr. Tran in which he requested an appointment, and the next day Nurse Mannie told Plaintiff that if he did not stop requesting the same things and filing grievances he would be transferred and "cut out of medical access completely." (Id.) On July 21, 2016, Plaintiff tried to file a grievance complaining that he had not received a response to his prior grievances, but Defendant Deputy Snyder refused to accept it and refused to allow Plaintiff to go to the medical ward. (Id. at 17.) On July 22, 2016, Deputies Snyder and Rodriguez refused to refer Plaintiff to medical call, and later that day received a letter from his attorney which had been opened. (Id.) Plaintiff filed a grievance against Deputies Snyder and Rodriguez the next day, and was eventually told that his letter had been mistakenly opened by a rookie. (Id. at 18.)

Plaintiff was told at "pill call" on August 1, 2016 that there was nothing for him, and was told by the nurse that perhaps his medication supply had run out. (Id.) His medication was suspended from August 2, 2016 until September 25, 2016. (Id. at 19.) He was seen by Dr. Tran and Nurse Mannie on September 25, 2016, and was told that he was "extradition material" and not a medical priority. (Id. at 19-20.) Dr. Tran told him that "even the commander didn't care and was not bothered about trifle inmate complaints and that everything was up to him," and that Plaintiff might still be getting his medication if he

had not continually filed grievances; Nurse Mannie told him that getting him on medication or a no-peanut diet would take an act of congress. (Id.)

Plaintiff alleges that from September 20-29, 2016, Deputy Rodriguez confronted Plaintiff in front of other inmates and referred to Plaintiff's HIV positive status, and Plaintiff reminded him that his medical status was confidential and could place him at risk for assault and harassment. (Id. at 20-21, 33.) Plaintiff alleges he suffers from colds, flu, body aches, headaches, chest congestion, stomach pain, acid reflux, joint pain, occasional blood in his stool, panic attacks, insomnia, dizziness, pneumonia and high blood pressure, but that nothing was done to relieve those conditions. (Id. at 21-23.)

Plaintiff alleges that his Eighth Amendment right to be free from deliberate indifference to his safety was violated by Defendant Rodriguez by allowing other inmates to learn of his medical condition, his Eighth Amendment right to be free from deliberate indifference to his serious medical needs was violated by all the Defendants in regards to the medical care, his First Amendment right to be free from retaliation was violated by Defendants Looney and Rodriguez when they retaliated in response to his grievances, and his Fourteenth Amendment right to freedom of association was violated by the VDF's racial segregation policy. (Id. at 23-29.)

## C. Defendant Commander Schroeder

First, the Court finds Plaintiff's Complaint requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(1) and § 1915A(b)(1) to the extent it seeks relief under § 1983 against Defendant Commander Schroeder. "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." Campbell v. Washington Dep't of Soc. Servs., 671 F.3d 837, 842 n.5 (9th Cir. 2011), citing Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987). The Complaint contains no factual allegations describing what Defendant Commander Schroeder did, or failed to do, other than an allegation that Defendant Dr. Tran told Plaintiff that Commander Schroeder did not care about his medical needs, and a

conclusory statement that Commander Schroeder failed "to act on his knowledge of the denial of medical care to plaintiff, harassment and abuse, retaliation and the substantial risk of serious harm." (Compl. at 26.) Plaintiff does not allege how this Defendant acquired his knowledge of Plaintiff's medical needs. To the extent Plaintiff seeks to hold him liable for the actions of his subordinates, there is no respondeat superior liability under 42 U.S.C. § 1983. Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Rather, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 62 (2011) ("A less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat superior liability on municipalities . . . .'"), quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976); Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986); Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.") A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff has not stated a claim against Commander Schroeder because he has failed to allege facts regarding what actions were taken or not taken by the Defendant which caused the alleged constitutional violations. See Canton, 489 U.S. at 385 ("*Respondeat* superior and vicarious liability will not attach under § 1983."), citing Monell, 436 U.S. at 694-95.

**D.   Failure to Protect and Retaliation**

Plaintiff alleges Defendant Deputy Rodriguez violated his Eighth Amendment right to be free from deliberate indifference to his safety by revealing his HIV positive status to

other inmates during his final week at the VDF. (Compl. at 20-21, 26, 33.) The rights of pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, but the Court uses the standards for Eighth Amendment claims regarding allegations of pretrial detainees' conditions of confinement claims. Simmons v. Navajo County, 609 F.3d 1011, 1017-16 (9th Cir. 2010). Plaintiff can state a failure to protect claim if he alleges that a defendant: (1) made an intentional decision regarding the conditions under which Plaintiff was confined which exposed Plaintiff to a substantial risk of serious harm that could have been avoided through reasonable and available measures, (2) did not take reasonably available measures to abate that risk even though a reasonable officer in the circumstances would have known of the risk, and (3) by not taking such measures caused Plaintiff's injuries. Castro v. City of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), cert. denied, 2017 WL 276190 (Jan. 23, 2017).

Plaintiff's allegations do not satisfy the standard for stating a failure to protect claim. Assuming the allegation that Deputy Rodriguez mentioned Plaintiff's HIV status "in front of other inmates" satisfies the first Castro prong, Plaintiff has not alleged facts supporting the other two prongs. He sets forth no factual allegations showing that Deputy Rodriguez failed to take reasonable measures to avoid or abate the risk, such as ensuring that Plaintiff was not in danger from other inmates, and has failed to allege that any injury resulted from the disclosure. As Plaintiff is no longer incarcerated at the VDF, he must allege he was injured in some manner by the disclosure of his HIV status in order to state a claim for failure to protect. Castro, 833 F.3d at 1071.

Plaintiff claims Deputy Rodriguez disclosed his medical status and interfered with his legal mail, and that Deputy Looney threatened him with a transfer, in retaliation for his complaints. (Compl. at 29.) However, Plaintiff has not alleged that those Defendants were in a position to, or did in fact carry out, their threats, or that he was injured as a result of their actions, and has failed to state a § 1983 claim for retaliation. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) ("A prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights

and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."); Leer, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); Brooks, 197 F.3d at 1248 ("Causation is, of course, a required element of a § 1983 claim.")

E.   **Deliberate indifference to serious medical needs**

Plaintiff has also failed to state a claim based on a delay or denial of medical care. In order to allege a violation of the Eighth Amendment for inadequate medical care, Plaintiff must satisfy both an objective and a subjective standard. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Plaintiff must plead the existence of an objectively serious medical need. McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.") Assuming the Complaint provides sufficient allegations of a serious medical need, it is clear, for the following reasons, the Complaint fails to include any further "factual content" to show that any Defendant acted with "deliberate indifference to [his] serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting Gamble, 429 U.S. at 104.

Plaintiff alleges that he asked the Deputy Defendants for access to medical care, but does not set forth specific allegations regarding what they failed to do, other than delay his access to his prescription medication which, as set forth below, does not amount to deliberate indifference. Rather, he alleges he made requests for medical care which led to his being examined by Defendants Dr. Tran and Nurse Mannie. The Complaint lacks any specific allegations that the deputies acted with deliberate indifference to his plight by "knowing of and disregarding an excessive risk to his health and safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557. To the extent Plaintiff alleges the Deputy Defendants acted negligently and without knowledge that Plaintiff had a serious medical need, a § 1983 claim cannot sound merely in negligence or substandard medical care. Farmer, 511 U.S. at 835 (holding that a mere negligent failure to protect an inmate from harm is not actionable under § 1983); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."), quoting McGuckin, 974 F.2d at 1059. "Deliberate indifference," on the other hand, "is a high legal standard," and claims of medical malpractice, negligence or a difference of opinion concerning the course of treatment are insufficient to establish a constitutional deprivation. Simmons, 609 F.3d at 1019, citing Toguchi, 391 F.3d at 1060.

Similarly, with respect to the allegations against the medical provider Defendants, Dr. Tran and Nurse Mannie, Plaintiff alleges that he was in fact provided with medical care while at the VDF. Although he alleges he was temporarily deprived of his prescription medication despite having a supply with him when he reached the VDF, he states that Dr. Tran informed him the delay was due to the fact that medication could not be provided until a prisoner's medical records had arrived. Moreover, Dr. Tran informed Plaintiff that the brief period of being without the medication would not adversely affect his condition, and Plaintiff has not alleged that his condition was adversely affected by the delay in providing him with his prescribed medication. Thus, he has merely alleged a difference of opinion regarding his need for medical care, and has not alleged that Dr. Tran acted with

deliberate indifference to his plight by "knowing of and disregarding an excessive risk to his health and safety" with respect to the delay in providing his prescription medication. Farmer, 511 U.S. at 837; Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557; Simmons, 609 F.3d at 1019 (claims of medical malpractice, negligence or a difference of opinion concerning the course of treatment are insufficient to establish a constitutional deprivation).

  Although Plaintiff lists various illnesses during his stay at the VDF, he does not allege they were caused by the delay in providing him medication. Rather, Plaintiff merely alleges that Dr. Tran and Nurse Mannie refused to change his peanut butter lunches, and warned him to stop filing grievances, but does not allege these Defendants were aware of and disregarded a serious medical need in those respects. For example, he does not allege that his medical records showed he suffered from a peanut allergy, and does not describe the severity of the allergy or that the Defendants were aware it was a serious medical need. Although he states that he had a previously recommended suggested treatment for his gastro-esophageal reflux disorder, he does not describe the severity of that medical need or provide details regarding the suggested treatment, and, as with his peanut allergy, does not allege that any Defendant was aware that the condition was severe or required immediate attention. Rather, he disagrees with the manner in which he was provided with medical care, and has therefore failed to state a claim for deliberate indifference to his serious medical needs. See Simmons, 609 F.3d at 1019 (recognizing that deliberate indifference to medical needs "is a high legal standard," and claims of medical malpractice, negligence or a difference of opinion concerning the course of treatment are insufficient to establish a constitutional deprivation), citing Toguchi, 391 F.3d at 1060. If Plaintiff wishes to proceed with a claim for deliberate indifference to his serious medical needs based on a delay in providing him with medication, or with the refusal to provide him with medical care, he must not rely on conclusory allegations, but must allege facts which show that the Defendants knew of and deliberately disregarded his serious medical needs. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557; Farmer, 511 U.S. at 837.

### F.     Racial Segregation

Finally, Plaintiff alleges that his Fourteenth Amendment right to freedom of association was violated by a VDF policy of racially segregating inmates. (Compl. at 24.) "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Race-based policies in prisons must be narrowly tailored to serve a compelling state interest. Johnson v. California, 543 U.S. 499, 510-11 (2005).

Plaintiff alleges that the San Diego Sheriff's Department and the VDF have a policy of using race in classifying and housing prisoners. (Compl. at 24.) To allege a claim of municipal liability, Plaintiff must include in his pleading enough "factual content" to support a reasonable inference to show that: (1) he was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); see also Iqbal, 556 U.S. at 678; Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The "mere possibility of misconduct" falls short of meeting the Iqbal plausibility standard. Id.; Moss, 572 F.3d at 969.

As currently pleaded, Plaintiff's Complaint fails to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for municipal liability for a policy of segregating prisoners at the VDF because Plaintiff has not named as a defendant who he seeks to hold liable for the existence of the policy, that is, which defendant he claims enacted the policy. The only named Defendants to this action are employees of San Diego County. However, there is no respondeat superior liability under 42 U.S.C. § 1983. Palmer, 9 F.3d at 1437-38. Thus, even if he has alleged facts which "might plausibly suggest" that he was classified by his race pursuant to any municipal custom, policy, or practice implemented or promulgated with deliberate indifference to his constitutional rights, or that such a policy was the "moving force" or cause of his injury, he has not named a proper municipal defendant as

to this claim. Id.; see also Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (applying Iqbal's pleading standards to Monell claims); Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights.")

### III. Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 7).

2. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. See S.D. Cal. CivLR 15.1; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

Dated: 2/27/2017

_____
Hon. Roger T. Benitez
United States District Judge